## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES MARTSOLF,** | : | **CIVIL ACTION NO. 1:05-CV-1941** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **LT. COL. JOHN BROWN,** | : | |
| **MAJ. TERRY SEILHAMER, CPT.** | : | |
| **ROBERT LIZIK, CPT. SUSAN BELL,** | : | |
| **LT. PETER VOGEL, LT. DON** | : | |
| **CARNAHAN, LT. MICHAEL** | : | |
| **PATRICK, SGT. MAX MOHNEY,** | : | |
| **SGT. GARY SCHULER,** | : | |
| **CPL. STEPHEN KREMPASKY,** | : | |
| **TPR. JAMES SHELDONE, and** | : | |
| **ARTHUR WEILAND,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff James Martsolf ("Martsolf"), an employee of the Pennsylvania State

Police ("PSP"), brings this action pursuant to 42 U.S.C. § 1983, which imposes civil

liability upon any individual who deprives another of a constitutionally-protected

right under the color of state law.  Martsolf alleges that defendants[1] retaliated

against him for exercising his First Amendment rights.[2]  Presently before the court

---

[1] Plaintiff has abandoned his claims against defendants Vogel, Carnahan, Patrick, Mohney, Krempasky, and Sheldone.  (See Doc. 61 at 2; Doc. 59 at 4, 11, 13, 17, 18).  Accordingly, the court will grant summary judgment in favor of these defendants without further discussion.

[2] Plaintiff's second amended complaint also set forth a substantive due process claim, but that claim was stricken (see Doc. 34), and only the First Amendment retaliation claim remains.

are defendants' motions for summary judgment (Docs. 48, 49, 50). For the reasons

that follow, the motions will be granted in part and denied in part.

## I.     <u>Statement of Facts and Procedural History</u>[3]

This case originates with sexual harassment complaints[4] that Connie Lantz

("Lantz") filed with the Equal Employment Opportunity Commission ("EEOC") and

the Pennsylvania Human Relations Commission ("PHRC") in May of 2005.[5] (Doc.

51 ¶¶ 155-56; Doc. 59 ¶¶ 155-56; <u>see</u> Doc. 55, Ex. K ¶ 25.) At the time, Lantz was

plaintiff's wife (<u>see</u> Doc. 55, Ex. J at 9; Doc. 55, Ex. M ¶ 4), and she went by the name

Connie Martsolf (<u>See</u> Doc. 55, Ex. K). Lantz and plaintiff both worked for PSP,

albeit in different locations. (Doc. 51 ¶ 71; Doc. 59 ¶ 71; Doc. 51, Ex. J at 28, 31-32.)

They claim that the defendants, current and former employees of PSP, retaliated

against them as a result of Lantz's sexual harassment complaints. (Doc. 51 ¶ 161;

Doc. 59 ¶ 161; <u>see</u> Doc. 1) They filed the instant suit together on September 26, 2005,

(Doc. 1), but Lantz withdrew all her legal claims in April of 2006, (Doc. 51 ¶ 163; Doc.

---

[3] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiff, the nonmoving party. <u>See</u> <u>infra</u> Part II.

[4] Lantz complained that, since February 2004, she had been harassed, primarily by her supervisor, defendant Vogel. (<u>See</u> Doc. 55, Ex. K.)

[5] The parties agree that Lantz filed her PHRC/EEOC complaints in May 2005, although some confusion as to the precise filing date arose during plaintiff's deposition, due to the fact that the verification form attached to the PHRC/EEOC complaints, which bears her signature, was dated May 22, 2004. (Doc. 55, Ex. J at 51, 55-56.) The parties agree that the 2004 date was an inadvertent error. (<u>See</u> Doc. 51 ¶ 155; Doc. 59 ¶ 155; Doc. 55, Ex. J at 51, 55-58.)

59 ¶ 163; Doc. 9).  Hence, the court will set forth only those facts relating to the alleged retaliation against Martsolf, the remaining plaintiff.

Plaintiff claims that he supported Lantz in her complaints and also voiced complaints himself.  (See Doc. 35 ¶ 24.)  He was interviewed, as part of the investigation that ensued from Lantz's EEOC/PHRC complaints, by PSP's Internal Affairs Division ("IAD").  (Doc. 51 ¶¶ 131, 136; Doc. 59 ¶¶ 131, 136.)  Martsolf spoke to his interviewers about the events giving rise to Lantz's complaints, (Doc. 55, Ex. J at 58-59).  Although plaintiff cannot recall whether he filed an EEOC complaint regarding the harassment of his wife, he did file an internal complaint on her behalf.  (Doc. 51 ¶ 134; Doc. 59 ¶ 134.)  Plaintiff complained to defendant Lizik about the inappropriate behavior of defendant Vogel, his wife's alleged harasser.  (Doc. 51 ¶ 136; Doc. 59 ¶ 136.)  To a "very limited" extent, plaintiff also discussed Lantz's complaints with other co-workers and friends.  (Doc. 51 ¶ 150; Doc. 59 ¶ 150.)  Finally, and most notably, plaintiff also "voiced" a complaint by filing the instant lawsuit.  (See Doc. 1.)

Plaintiff alleges that he was subjected to retaliation as a result of his participation in the EEOC/PHRC complaints and the instant action.  Specifically, plaintiff claims that defendant Lizik told him that supporting Lantz had jeopardized his career.  (Id. ¶ 28.)  Plaintiff also asserts that defendants "manipulated the IAD process" and conducted the IAD investigation in a retaliatory manner.  (Doc. 35 at 2, ¶ 27.)  In addition, plaintiff alleges that he was removed from the Special Emergency Response Team ("SERT").  (Id. ¶ 29; Doc. 55,

3

Ex. J at 15), that he was denied a promotion for which he was purportedly qualified, (Doc. 35 ¶ 35), that he was stripped of his supervisory authority, (Id. ¶ 37), that he was transferred from the Operations Sergeant position he held to a position in the patrol section (see Doc. 61 at 3, 13; Doc. 55, Ex. J at 87-88), and that he was personally subjected to harassment, (Doc. 35 ¶ 38).

Plaintiff filed an amended complaint on July 18, 2006, (Doc. 14), and a second amended complaint on February 12, 2008, (Doc. 35). Defendants thereafter filed motions for summary judgment (Docs. 48, 49, 50) asserting that plaintiff cannot make out a claim of First Amendment retaliation. The parties have fully briefed the issues, which are now ripe for disposition.

## II. **Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see

<u>also</u> Fᴇᴅ. R. Cɪᴠ. P. 56(c), (e).  Only if this threshold is met may the cause of action

proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

## III.   <u>Discussion</u>

Plaintiff advances a claim pursuant to 42 U.S.C. § 1983.[6]  Section 1983

provides for civil liability when official action causes a "deprivation of rights

protected by the Constitution."  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690

(1978).  However, § 1983 is not an independent source of substantive rights.  <u>Baker</u>

<u>v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979); <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d

Cir. 1996).  Rather, "it provides only remedies for deprivations of rights established

elsewhere in the Constitution or federal laws."  <u>Kneipp</u>, 95 F.3d at 1204; <u>see also</u>

<u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 119 (1992) (stating that § 1983 "does

not provide a remedy for abuses that do not violate federal law").  In order to

establish a § 1983 claim, a plaintiff must demonstrate, first, the deprivation of a

constitutional right, and, second, that a "person acting under the color of state law"

is responsible for the alleged deprivation.  <u>Kneipp</u>, 95 F.3d at 1204 (internal

citations omitted); <u>Collins</u>, 503 U.S. at 120.

---

[6]Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .

42 U.S.C. § 1983.

In the pending matter, plaintiff complains that defendants retaliated against him for exercising his First Amendment rights.  To make out a First Amendment retaliation claim, "plaintiffs must show (1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action."[7] Lauren v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); see also Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).  Defendants can rebut plaintiff's claim by establishing that the action or decision alleged to be retaliatory would have occurred "even in the absence of the protected conduct." Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001); Springer v. Henry, 435 F.3d 268, 275 (3d Cir. 2006).  Defendants contend that plaintiff has failed to show that he engaged in an activity protected by the First Amendment, or that any of the defendants were personally involved in retaliating against him, or that retaliatory acts occurred.  The court will address these issues *seriatim*.

## A.    **Failure to Establish a Protected Activity**

According to plaintiff, the protected activities in which he engaged include supporting Lantz in her pursuit of her complaint, participating in her complaint, filing complaints himself, and contacting "a known civil rights attorney" who

---

[7] Specifically, regarding the requisite causal connection, "the plaintiff has the initial burden of showing that his constitutionally protected conduct was a 'substantial' or 'motivating factor' in the relevant decision." Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287(1977)).

ultimately filed the instant action. (Doc. 61 at 10-12.) As a threshold matter,

defendants claim that plaintiff's speech was a matter of private concern rather than

citizen speech on a matter of public interest, and as such, it was not constitutionally

protected. See Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). In Garcetti, the

Supreme Court held that, in order to determine whether a public employee's

speech is constitutionally protected, one must ascertain "whether the employee

spoke as a citizen on a matter of public concern." Id. If he did not, then he "has no

First Amendment cause of action" arising from the speech.[8] Id. In his opposition

brief, plaintiff vaguely states that his "initial involvement in these matters . . .

clearly rises to the level of conduct protected under Title VII principles, and is

actionable in a Section 1983 First Amendment retaliation claim," (Doc. 61 at 11), but

he fails to delineate an example of protected speech with the requisite precision.

Plaintiff appears to focus on the filing of the instant lawsuit and Lantz's

administrative complaints as his actions qualifying as "protected activity," (see id.

at 10-12, 14). To the extent that plaintiff has not abandoned the Garcetti speech

claim, the court finds that plaintiff's speech falls squarely in the realm of private

concerns. Indeed, plaintiff has failed to identify any specific statements which

could be construed as a citizen voicing his opinion on a matter of public concern.

He does not have any record evidence of statements alleging, for example, rampant

---

[8] Plaintiff's involvement in the filing of the instant suit clearly qualifies as engaging in a protected activity. Therefore, the court need not resolve the question of whether plaintiff engaged in a protected activity merely by "supporting his spouse" in her filing of the EEOC/PHRC complaints. (Doc. 61 at 10.)

incidents of sexual harassment in the PSP. His expressions of concern relate solely to the treatment of his former spouse. (<u>See, e.g.</u>, Doc. 55, Ex. J at 46-47, 58-59.)

Plaintff conflates the protected activity of <u>Garcetti</u> speech with the First Amendment petition clause. The gravamen of plaintiff's retaliation claim is retribution for filing the EEOC/PHRC complaints and the instant matter. It is hornbook law that the act of filing a grievance or a lawsuit is an activity protected as a matter of petitioning for redress. In <u>Foraker v. Chaffinich</u>, the Third Circuit held that a lawsuit is an example of a formal petition, and "when a formal petition is made, the employee need not show that the subject matter of the petition involved a matter of public concern." 501 F.3d 231, 236 (3d Cir. 2007). Accordingly, the court concludes that plaintiff did, indeed, engage in activity protected by the First Amendment by filing the instant action. The court will thus turn to the issues pertaining to defendants' alleged retaliation against plaintiff. Specifically, the court will address whether the retaliatory acts were sufficient to deter a person of ordinary firmness from exercising his rights and whether there is a causal connection between the activity and the retaliatory action. <u>See</u> <u>Lauren</u>, 480 F.3d at 267.

**B.**     <u>**Failure to Establish Retaliatory Acts and/or Personal Involvement**</u>

Plaintiff alleges that defendants retaliated against him through the IAD investigation, by removing him from SERT, by denying him a promotion, by stripping him of his supervisory duties, by removing him from the position of Operations Sergeant, and by harassing him. (<u>See</u> Doc. 35 ¶ 42; Doc. 61 at 13-14.)

8

Plaintiff also claims that defendant Lizik directly stated that he "would never be promoted to Lieutenant because of his actions, and specifically, this litigation." (Doc. 61 at 13.) Defendants argue that "[p]laintiff has failed to demonstrate that any of the allegedly adverse actions taken against him were done in retaliation for his engaging in protected [conduct]." (Doc. 66 at 3.) Defendants also contend that plaintiff cannot establish the personal involvement[9] of the defendants—Bell, Brown, Lizik, Schuler, Seilhamer, or Weiland—in the alleged retaliation.

### 1. Investigation of the Complaints by the IAD

Plaintiff alleges that defendant Brown, as "the head of the internal affairs division," was involved in the internal investigations ensuing from the EEOC/PHRC complaints.[10] (See Doc. 61 at 4-5, 6, 13-14.) Plaintiff generally avers that the IAD investigation was retaliatory,[11] but he fails to bring to the court's attention any evidence substantiating this conclusory allegation. In Brennan v. Norton, 350 F.3d 399 (3d. Cir. 2003), the Third Circuit noted that "[d]etermining whether a plaintiff's

---

[9] In § 1983 claims, "liability cannot be predicated solely on the operation of *respondeat superior*." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). In order to be liable under § 1983, a defendant must have "personal involvement" in the deprivation of the claimant's rights, which can be shown by "allegations of personal direction or of actual knowledge and acquiescence." Id. Claimants must make such allegations with "appropriate particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

[10] Plaintiff has not alleged the personal involvement of any of the other defendants in the IAD investigation.

[11] Plaintiff hypothesizes, for instance, that "it is inferentially clear that the PSP transfers its EEO matters, filed in a clearly protected forum, to the IAD, a dubiously unprotected forum, so that it can manipulate facts and go after complainants . . . ." (Doc. 61 at 11.)

First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry . . . ." Id. at 419 (quoting Suarez Corp. Industries v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000)).  Some actions—for instance, adverse employment decisions—clearly constitute retaliation when they occur on the basis of protected activity;[12] but other actions have no constitutional significance.[13]  The Third Circuit has held that the "key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights . . . .'" McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (quoting Suppan, 203 F.3d at 235).  Accordingly, the court will examine whether plaintiff's evidence is adequate to support a finding that the IAD investigation would have caused a "reasonably hardy" person to "refrain from protected activity."  See Muti v. Schmidt, 96 F. App'x 69, 74 (3d Cir. 2004).

Plaintiff cannot persuade the court that mere inquiry into the facts pertaining to Lantz's harassment complaint constitutes retaliatory action.  To the

---

[12] It is clear that "[a] public employer adversely affects an employee's First Amendment rights . . . when it makes decisions, which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights." Brennan, 350 F.3d at 419 (quoting Suarez Corp., 202 F.3d at 686).

[13] The Third Circuit has held that, in order for conduct to constitute retaliation, "[t]he effect of the alleged conduct on the employee's freedom of speech . . . must be more than de minimis or trivial." McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006); see also Brennan, 350 F.3d at 419 ("[C]ourts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands." (quoting Suarez Corp., 202 F.3d at 686)).

contrary, employers must investigate allegations of sexual harassment, lest they incur liability.  See, e.g., Faragher v. City of Boca Raton, 524 U.S. 775, 780 (1998) ("We hold that an employer is vicariously liable for actionable discrimination caused by a supervisor, but subject to an affirmative defense looking to the reasonableness of the employer's conduct . . . .").  Internal investigations routinely follow complaints like Lantz's, and the court finds no reason to conclude that they deter ordinary individuals from exercising their First Amendment rights.  Plaintiff has not provided any evidence that the investigation in the instant case was out of the ordinary.  In the absence of any record citations demonstrating impropriety in the IAD investigation, defendants cannot be subject to liability for pursuing their employer's obligation to conduct appropriate inquiry upon notice of such claims.  Thus, plaintiff has failed to meet his burden of coming forward with evidence supporting his right to relief, see Celotex, 477 U.S. at 322-23, and this allegedly retaliatory act does not present an issue for trial.

## 2.  Removal of Plaintiff from SERT

Plaintiff contends that the defendants[14] removed him from SERT without justification, to retaliate against him for the complaints that he and Lantz filed. (See Doc. 59, Ex. 1 ¶ 2; Doc. 59, Ex. 7 ¶ 3; Doc. 59, Ex. 8A ¶ 2; Doc. 59, Ex. 8B ¶ 2.) However, Martsolf's own testimony undercuts this allegation; in his deposition,

---

[14] Plaintiff contends that "Lizic [sic] was directly involved in removing plaintiff from SERT," (Doc. 61 at 14), and he further argues that "it is simply unreasonable to conclude that Major Seilhamer was not involved in the decision to remove plaintiff from the SERT," (Doc. 61 at 15).  Plaintiff has not alleged that any other defendants were personally involved in removing him from SERT.

plaintiff indicated that he was removed from SERT in January of 2005,[15] several months before Lantz filed the EEOC/PHRC complaints in May of 2005. Although plaintiff expressed uncertainty regarding the dates on which he was removed from SERT, he has failed to present any evidence suggesting that the EEOC/PHRC complaints pre-dated his removal from SERT or otherwise contradicting his deposition testimony. In light of plaintiff's statement that his removal from SERT occurred in January of 2005, *before any complaints were filed*, and without evidence to the contrary, no reasonable jury could possibly conclude that the removal constituted retaliation for the complaints. Hence, plaintiff's claims involving his removal from SERT do not present a genuine issue for trial. See Anderson, 477 U.S. at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.")

### 3.   Statement that Plaintiff's Complaints Jeopardized His Career

Plaintiff argues that "Lizic [sic] specifically advised Plaintiff . . . that making these complaints had a significant negative, impact on James's career by keeping him off the 'major case team' and hindering his promotion to Lieutenants [sic]." (Doc. 61 at 7; see also Doc. 61 at 4, 13, 14; Doc. 55, Ex. J at 77.) Plaintiff's testimony

_____

[15] When plaintiff was deposed in 2008, he testified that three years had passed since his removal from SERT. (See Doc. 55, Ex. J at 20:3, 21:11-12.) He indicated that he received notice of temporary removal from SERT in September of 2004, which was later changed to a permanent removal. (Doc. 55, Ex. J at 16-17.) Plaintiff's attention was referred to the second amended complaint, which alleged that he was removed from SERT in January of 2007. (See Doc. 35 ¶ 29.) Plaintiff then testified, "I believe those dates are in error. It's '05, I'm thinking. . . . I've been off of SERT for three years, I believe, so if this is '08 now, that has to be '05 and not '07." (Doc. 55, Ex. J at 19-20; see also Doc. 55, Ex. J at 21.)

that Lizik made such a statement clearly supports plaintiff's claim of retaliation, but the court is not persuaded that the statement itself was retaliatory.

The comment purportedly made by Lizik is not a verbal reprimand, and it does not fall within the definition of retaliatory conduct; rather, it simply corroborates *past* retaliatory conduct. Stated differently, it is evidence that Martsolf's superiors already made retaliatory decisions relating to a promotion and work assignments. The court therefore concludes that the alleged statement does not qualify as retaliatory conduct, but is properly considered at trial as corroborative evidence of retaliation.

### 4. <u>Denial of a Promotion</u>

The second amended complaint alleges that plaintiff's supervisor, Captain Waters, recommended him for a promotion for which he was qualified, but the promotion was denied.[16] (Doc. 35 ¶ 35.) Plaintiff indicates that he believes the denial of a promotion was retaliatory, based on Lizik's statement. (Doc. 55, Ex. J at 101; <u>see also</u> Doc. 59, Ex. 1 ¶ 3.) Denying an employee a promotion for engaging in protected conduct undeniably meets the definition of a retaliatory action. <u>See</u> <u>Brennan</u>, 350 F.3d at 419 (quoting <u>Suarez Corp.</u>, 202 F.3d at 686) (holding that an employer infringes an employee's rights when, *inter alia*, it makes promotion decisions "based on the exercise of an employee's First Amendment rights."). In light of Lizik's alleged statement, the court cannot conclude that a trial on this issue

---

[16] Plaintiff fails to identify the person(s) alleged to be responsible for the decision to deny him the promotion. Circumstantial evidence would suggest that his superiors—e.g., Lizik—have personal involvement in such decisions.

would be an empty and unnecessary formality.  Thus, summary judgment is not warranted.

### 5.    <u>**Stripping Plaintiff of Supervisory Duties**</u>

Plaintiff contends that he was stripped of his supervisory duties.  (Doc. 35 ¶ 37.)  According to plaintiff's testimony, he had certain authority as the crimes section special projects sergeant, (Doc. 55, Ex. J at 103)—for instance, he was in charge of the vice unit, (<u>id.</u>)—but in the fall of 2005, the vice unit started to answer to the crime lieutenant rather than to plaintiff (<u>id.</u> at 104; <u>see also</u> <u>id.</u> at 107).  Plaintiff stated that he was stripped of his supervisory authority when he was assigned to a newly-created task force and relocated, although he asserts that he was still able to fulfill his supervisory duties in spite of his assignment and relocation.  (<u>Id.</u> at 106-07, 109-10.)  He accuses defendants Lizik, Seilhamer, and Schuler of personal involvement in this alleged retaliatory action.[17]  (<u>Id.</u> at 107-08.)  If proven, and causally connected to plaintiff's complaints, this loss of supervisory responsibility would qualify as retaliatory conduct.  <u>See</u> <u>Brennan</u>, 350 F.3d at 419.  Although plaintiff's evidence of defendants' personal involvement in stripping him of authority is circumstantial, it is sufficient to give rise to a genuine issue for trial.  Thus, summary judgment is inappropriate.

---

[17] Plaintiff presumes that Lizik and Seilhamer were involved in creating the task force to which he was assigned when the vice unit stopped reporting to him. (Doc. 55, Ex. J at 102-03, 106-09.)  Plaintiff also testified that Lizik and Schuler were "dealing with issues regarding a member of my task force."  (<u>Id.</u> at 108).  These allegations form the basis of plaintiff's claim that Lizik, Seilhamer, and Schuler were involved in the change in his supervisory authority.

**6.** **Removal of Plaintiff from Operations Sergeant Position**

Plaintiff alleges that Lizik directed his removal from the position of Operations Sergeant to a position in the patrol section. (Doc. 61 at 3, 13; Doc. 55, Ex. J at 87-88.) Hearsay statements by an individual named Captain Sheldon Epstein ("Epstein") form the basis for his claim.[18] The court will not consider such hearsay testimony as evidence of the truth of the matter asserted. See Shelton v. Univ. of Med. & Dentistry, 223 F.3d 220, 223 n.2 (3d Cir. 2000) ("In this circuit, hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial.") (citing Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995)). However, considering Lizik's position in plaintiff's chain of command, and considering Lizik's alleged statement that plaintiff had jeopardized his career, there is sufficient circumstantial evidence that Lizik was personally involved in transferring plaintiff to present an issue for trial.

---

[18] When questioned in his deposition as to who told him that Lizik instructed Epstein to remove plaintiff from his position, plaintiff testified that "Epstein told the Union President, David Bova that, who told me that." (Doc. 55, Ex. J at 87-88.) Plaintiff also provided a declaration stating that "Captain Epstein told me Lizik instructed him to transfer me from Operations Sergeant to Patrol Section Sergeant." (Doc. 59, Ex. 3 ¶ 6.) Another one of plaintiff's declarations stated that he "was present in Captain Sheldon Epstein's office when Major Lizik called him and instructed him" to remove plaintiff from the position. (Doc. 59, Ex. 1 ¶ 4.) Even if the court assumes the truth of the latter version of the events, however, it provides no more than hearsay evidence that Lizik was the person to whom Epstein spoke on the phone and that Lizik gave Epstein the directive alleged. If plaintiff's counsel wishes to further pursue the claim that Lizik orchestrated plaintiff's transfer, he would be advised to present evidence from Epstein himself.

### 7. **Harassment of Plaintiff**

The basis for Plaintiff's claim that defendants harassed him is neither clearly articulated nor well-documented in the record before the court. Indeed, plaintiff has essentially abandoned the allegations in the second amended complaint in which he claimed that defendants harassed him.[19] The court notes, however, that plaintiff alleges that defendants Bell, Weiland, and Lizik harbored a retaliatory animus toward plaintiff (Doc. 61 at 3, 6, 8). Assuming, *arguendo*, that these allegations form the basis of plaintiff's harassment claim, the court finds that plaintiff has failed to come forward with sufficient supportive evidence to create a genuine issue of fact on said allegations. The court will discuss the inadequacy of plaintiff's evidence against each defendant's alleged harassment in turn.

With respect to defendant Bell, there is no dispute that she had an angry outburst at plaintiff.[20] However, plaintiff has provided no other evidence of

---

[19] In his deposition, upon being asked to clarify the reference to "constant harassment" appearing in paragraph 38 of the second amended complaint, plaintiff testified that employees in the Butler barracks would subject him to "constant questions" and "constant comments," but none of the named defendants made any comments to him. (Doc. 55, Ex. J at 117-18.) The court will not consider hearsay testimony, as to what other people told plaintiff the named defendants said, as evidence of the truth of the matter asserted, see Shelton, 223 F.3d at 223 n.2; thus, plaintiff's evidence does not implicate any named defendants in this alleged harassment. Furthermore, plaintiff later admitted that this allegation of the second amended complaint "only relates to comments and verbal harassment which were made to [Lantz] and not anything made directly to James Martsolf." (Doc. 51 ¶ 153; Doc. 59 ¶ 153.)

[20] Bell told plaintiff that "if he ever came on her property or harassed any of her family that she would have him arrested." (Doc. 51 ¶ 14; Doc. 59 ¶ 14; see also Doc. 55, Ex. J at 71, 73-74.)

harassment in the relevant time period.[21]  (See Doc. 55, Ex. J at 73-74.)  The

evidence against Bell is therefore insufficient to support a finding that she

committed a retaliatory act in violation of the First Amendment. See Hartley v.

Pocono Mountain Reg'l Police Dep't, No. 3:04-CV-2045, 2007 WL 906180 at *6

(finding "no basis for a claim of retaliation" in a case in which "[p]laintiff presented

evidence of only one discrete instance of alleged harassment").[22]

Regarding defendant Weiland, plaintiff argues that "[h]e admits to making

remarks reflecting an animus against Plaintiff," (Doc. 61 at 6), but he fails to cite to

any record evidence of these purported admissions, and the court is unaware of any

such evidence.  The court notes that, in his deposition, plaintiff testified that

Weiland did not harass plaintiff directly.[23]  This testimony undermines any

---

[21] One of plaintiff's declarations alleges that an individual named Sally
Clawson heard Bell make various comments suggesting her animus against
plaintiff.  (Doc. 59, Ex. 2 ¶ 2-3.)  However, no declaration from Clawson herself is
included in the summary judgment record, and the court will not consider hearsay
testimony as evidence of the truth of the matter asserted.  See Shelton, 223 F.3d at
223 n.2.  The court notes that even if the alleged statements were proven, the
plaintiff has failed to present evidence that they were retaliatory, or even that Bell
made them subsequent to the time period in which he and Lantz filed complaints
against PSP and some of its employees.

[22] Assuming, arguendo, that plaintiff established harassment from Bell,
plaintiff has not provided any record support to establish a causal connection with
the instant complaint.

[23] Plaintiff has theorized that Weiland harassed Lantz "to get to me," (Doc.
55, Ex. J at 92), but plaintiff has not raised this allegation in the arguments he
presents to the court, nor has he drawn the court's attention to any evidence
substantiating his deposition testimony on this point.

allegation that Weiland subjected plaintiff to harassment. Thus, plaintiff has failed to present adequate evidence as to Weiland.

Finally, plaintiff alleges that there is "direct evidence of . . . general animus on the part of Lizic [sic] personally." (Doc. 61 at 8). The actions discussed *supra*—such as Lizik's alleged statement that plaintiff's involvement in the complaints jeopardized his career, the creation of the special task force, and the transfer of plaintiff from the position Operations Sergeant to a position in the patrol section—serve as evidence of Lizik's retaliation.[24] However, plaintiff has not come forward with sufficient evidence of personal harassment distinct from plaintiff's claim of retaliation. Therefore, the court will grant summary judgment as to plaintiff's general allegations of harassment.

---

[24] In his deposition, plaintiff also testified that Lizik "distribut[ed] overtime funds to other members instead of me," (Doc. 55, Ex. J at 77; see also id. at 85) and that Lizik told plaintiff "that he thought he was going to have to transfer [plaintiff] down to Beaver," (id. at 85-86). However, as plaintiff has not raised these issues in his arguments to the court, the court will not assume that he intends to rely on them in opposing the pending motions for summary judgment.

**IV.**   **Conclusion**

Plaintiff brings a claim of First Amendment retaliation, but he has abandoned his claims against some of the defendants.  Plaintiff's proof is sufficient to support a finding that his conduct was protected under the First Amendment. With respect to the alleged acts of retaliation, plaintiff's evidence is inadequate to establish the retaliatory nature of the IAD investigation or his removal from SERT, or to demonstrate that any named defendants harassed him in retaliation for his protected activity.  However, genuine issues of fact remain as to whether defendants Lizik, Seilhamer, or Schuler committed other acts of retaliation against plaintiff in violation of the First Amendment.  Therefore, the court will grant defendants' motions for summary judgment in part and deny them in part.

An appropriate order follows.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge



Dated:      December 15, 2009

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES MARTSOLF,** | : | **CIVIL ACTION NO. 1:05-CV-1941** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **LT. COL. JOHN BROWN,** | : | |
| **MAJ. TERRY SEILHAMER, CPT.** | : | |
| **ROBERT LIZIK, CPT. SUSAN BELL,** | : | |
| **LT. PETER VOGEL, LT. DON** | : | |
| **CARNAHAN, LT. MICHAEL** | : | |
| **PATRICK, SGT. MAX MOHNEY,** | : | |
| **SGT. GARY SCHULER,** | : | |
| **CPL. STEPHEN KREMPASKY,** | : | |
| **TPR. JAMES SHELDONE, and** | : | |
| **ARTHUR WEILAND,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 15th day of December, 2009, upon consideration of

defendants' motions for summary judgment (Docs. 48, 49, 50), and for the reasons

set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motions for summary judgment (Docs. 48, 49, 50) are GRANTED
   in part and DENIED in part as follows:

   a. The motions are GRANTED with respect to defendants Vogel,
      Carnahan, Patrick, Mohney, Krempasky, Sheldone, Brown,
      Bell, and Weiland.

   b. The motion is GRANTED insofar as plaintiff claims that
      defendants retaliated against him through the IAD
      investigation, his removal from SERT, or harassed him.

   c. The motion is DENIED in all other respects.

2.       The Clerk of Court is instructed to defer entry of judgment until the conclusion of this case.

3.       A revised pretrial and trial schedule shall issue by future order of court.


                                                          _S/ Christopher C. Conner_
                                                    CHRISTOPHER C. CONNER
                                                    United States District Judge